**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
MICHAEL KANOWITZ, STEVEN ROY,
HELENE CRANMER, CHARLES HYDO,
and DANIEL STURCHIO, on behalf of themselves
and all others similarly-situated,                                    **MEMORANDUM**
                                                                      **AND ORDER**
                                                                      CV 13-649 (DRH) (AKT)

                              Plaintiffs,


              - against -


BROADRIDGE FINANCIAL SOLUTIONS, INC.


                              Defendant.
-------------------------------------------------------------X
**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.       <u>P</u><u>RELIMINARY</u> <u>S</u><u>TATEMENT</u>

         This is a class action lawsuit alleging claims of (1) unpaid wages in violation of Article 6

of the New York Labor Law, §§ 190 *et seq.*, (2) breach of contract, and (3) other claims that "can

be inferred from the facts" against Defendant Broadridge Financial Solutions, Inc. ("Defendant"

or "Broadridge"). *See* Complaint ("Compl.") [DE 1]. This action is brought by Plaintiffs

Michael Kanowitz, Steven Roy, Helene Cranmer, Charles Hydo and Daniel Sturchio

(collectively, "Plaintiffs") on behalf of themselves and all similarly-situated employees. *Id.* The

Plaintiffs alleges that Broadridge failed to pay them non-discretionary wages despite their

satisfaction of objective criteria set forth in Defendant's Fiscal Year 2009 Management by

Objectives (MBO) Bonus Plan Document. *Id.* ¶ 1.

         Before the Court is Defendant's motion for a full stay of discovery pending the

disposition of its anticipated motion to dismiss the Complaint for lack of subject matter

jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(4)(B). *See*

Defendant's Motion to Stay Discovery ("Def.'s Mot.") [DE 14].  Defendant argues that this

Court lacks jurisdiction in light of the "home state" and "local controversy" exceptions set forth

in CAFA, "which are triggered when two-thirds of the putative plaintiff class and the defendant

is a citizen of the state in which the action was filed."  *Id*. at 1.  As, such, Broadridge submits that

there is "no basis for jurisdictional or any other discovery."  *Id*.  In opposition, Plaintiffs contend

that Defendant has not provided sufficient evidence that CAFA applies and that limited

discovery is warranted to determine whether two-thirds of the putative plaintiff class and the

defendant are indeed citizens of New York State.  *See* Plaintiffs' Opposition to the Motion to

Stay Discovery ("Pls.' Opp.") [DE 15].  For the reasons set forth below, Defendant's motion to

stay discovery is GRANTED, in part, and DENIED, in part.

## II.    BACKGROUND

### A.  The Complaint

In Fiscal Year 2009, a period which began on July 1, 2008 and ended on June 30, 2009,

Broadridge implemented and published a bonus payment plan entitled the "FY '09 Management

by Objectives (MBO) Bonus Plan Document."  Compl. ¶ 1.  According to the Complaint, the

MBO Bonus Plan Document contained both discretionary and objective bonus provisions.  *Id*.

The discretionary portion of the Bonus Plan "carried a 10% weight."  *Id*.  The objective section,

by contrast, constituted 90% of the weight of the plan.  *Id*.  At the beginning of Fiscal Year 2009,

the named Plaintiffs and the Class Action Plaintiffs were provided with the Bonus Plan

Document which outlined the criteria under the plan.  *Id*.  Although the named Plaintiffs and the

Class Action Plaintiffs satisfied the objective criteria, Defendant either "slashed" or refused to

pay Plaintiffs the amount that they had earned.  *Id*.  Plaintiffs argue that "[t]hese totals are due

and owing to Plaintiffs and Class Action Plaintiffs as unpaid wages."  *Id*.  In the alternative,

Plaintiffs maintain that "Defendant's failure to pay this money to Plaintiffs and Class Plaintiffs is a breach of contract entitling Plaintiffs and Class Plaintiffs to damages." *Id.*

Relevant to the motion before the Court is Plaintiffs' allegation in the Complaint that the basis for subject matter jurisdiction is 28 U.S.C. § 1332(d). Compl. ¶ 2. Plaintiffs claim that the "amount in controversy exceeds the sum or value of $5,000,000 and at least one member of the class of plaintiffs is a citizen of a different state than Defendant Broadridge." *Id.* The Complaint alleges that all five individually-named Plaintiffs are citizens of the State of New York and were employed by Broadridge during Fiscal Year 2009. *Id.* ¶ 4. Broadridge is alleged to be "a corporation organized and existing under the laws of Delaware" and "according to the New York State Department of State," maintains a "principal executive office" at 2 Journal Square, Jersey City, New Jersey 07306." *Id.* ¶ 5.

Plaintiffs seek class certification under Rule 23(a) and 23(b)(3). *See* Compl. ¶¶ 7-8. Specifically, Plaintiffs seek to certify the following class:

> Current and former employees of Defendant who worked for Defendant during the Defendant's 2009 fiscal year, i.e. from July 1, 2008 through June 30, 2009, and who were eligible to receive a bonus under the Defendant's MBO Bonus Plan applicable to the 2009 fiscal year.

*Id.* ¶ 9. The Plaintiffs contend that the proposed class will satisfy the requirements of both Rule 23(a) and 23(b)(3). *Id.* ¶¶ 10-20. Plaintiffs further note that "[t]here are over 100 known employees of the Defendant who fit the class definition outlined above; many hundreds more may exist." *Id.* ¶ 10.

On or about September 1, 2008, Broadridge published the Fiscal Year 2009 MBO Bonus Plan Document. Compl. ¶ 27. The cover page of the document specifically stated that the plan was "retroactive to or 'effective' as of July 1, 2008." *Id.* All named Plaintiffs were employed at

Broadridge during the entirety of Fiscal Year 2009 according to the Complaint.  *Id.* ¶¶ 21-26.

The purpose of the MBO Bonus Plan was to "[p]rovide designated associates with individual

goals that are aligned with [Broadridge's] business goals and to reward associates when the

organization achieves its goals." *Id.* ¶ 28 (internal quotations omitted).  The MBO Bonus Plan

was calculated on the basis of four components:  (1) financial results, (2) client satisfaction, (3)

projects/initiatives, and (4) leadership.  *Id.* ¶ 30. The MBO Bonus Plan Document explained how

to calculate the different components.  *Id.* ¶ 31.  The Plaintiffs allege that the leadership

component was the only discretionary section and that it carried a 10% weight.  *Id.*  "Thus, based

on this language and simple logic," Plaintiffs conclude, "all other components of the MBO

Bonus Plan, comprising the other 90% of the calculation, were to be calculated on a non-

discretionary basis."  *Id.*  Supervisors employed by Broadridge "explained to Plaintiffs and Class

Action Plaintiffs exactly what they had to do to earn 90% of their objectively-calculated bonuses

for that year."  *Id.* ¶ 33.

At the end of Fiscal Year 2009, supervisors submitted the calculations for approval.

Compl. ¶ 34.  Plaintiffs claim that [u]pon such submission, even though the eligible employees

had spent the previous year working towards and striving to meet such objectively-set criteria,

the Defendant's upper-level supervisors determined that none of the employees' bonuses could

exceed a certain percentage even if those employees had earned a higher percentage in

accordance with the objectively-based formula as set [forth]…in the 2009 MBO Bonus Plan

Document."  *Id.* ¶ 35.  Consequently, Plaintiffs contend, "Broadridge recalculated and slashed

the bonuses of its Plan-eligible employees, including the five named Plaintiffs and the Class

Action Plaintiffs, who had earned a higher bonus amount under Broadridge's announced and pre-

determined objective formula."  *Id.* ¶ 36.  Thereafter, "Broadridge paid to Plaintiffs and Class

Action Plaintiffs such lower amounts and not the amounts that Plaintiffs and Class Action Plaintiffs had objectively earned over the course of the 2009 fiscal year." *Id*.

In Count I of the Complaint, Plaintiffs assert a cause of action for unlawfully withheld wages under New York Labor Law §§ 190, *et seq*. Compl. ¶¶ 39-42. In Count II, Plaintiffs allege a cause of action for breach of contract under New York state common law. *Id*. ¶¶ 45-50.

### B. Procedural History

#### 1. *Defendant's Pre-Motion Conference Letter*

On April 10, 2013, Defendant filed a letter to Judge Hurley requesting a pre-motion conference for purposes of moving to dismiss the Complaint, pursuant to FED. R. CIV. P. 12(b)(1), for lack of subject matter jurisdiction. DE 10. Defendant argued that the Court is deprived of subject-matter jurisdiction in light of the "home state" and "local controversy" exceptions to CAFA since more than two-thirds of the putative class and Broadridge are citizens of the same state - - New York. *Id*. at 1-2. In their April 3, 2013 responding letter to Judge Hurley, Plaintiffs consent to a pre-motion conference but argue that factual issues exist with respect to the citizenship of Broadridge and the putative Class Plaintiffs. DE 12 at 2. As such, "Plaintiffs…request discovery into the factual contentions of citizenship that the Defendant raises in its letter." *Id*. at 3. However, Plaintiffs take no position with respect to merits-based discovery. *Id*.

#### 2. *The Initial Conference*

On April 11, 2013, the parties appeared before this Court for an Initial Conference. DE 13. The Court acknowledged that "Defendant is seeking to stay all discovery pending the submission and determination of its intended motion to dismiss." *Id*. Plaintiffs' counsel asserted that they seek discovery to proceed, "at least with regard to permitting discovery on the issue of

subject matter jurisdiction." *Id.* In light of the request to stay discovery and the anticipated motion before Judge Hurley, the Court stated that:

> After hearing from both sides today, I advised counsel that I believe it is appropriate for this Court to take a further look, in a more formal way, at the arguments and cases cited by defendant's counsel this morning, in addition to giving plaintiffs' counsel an opportunity to argue why limited discovery should not proceed, notwithstanding defendant's legal arguments. Although the Court realizes that there is some overlap between the merits of this action and a request for a complete stay, I have asked counsel to focus on the "stay" argument as much as possible. Defendant's counsel will file a letter motion, not to exceed three pages, on ECF by April 22, 2013 seeking a full stay of discovery pending the anticipated motion to dismiss. Plaintiffs' counsel will file his opposition to the letter motion by April 29, 2013. Counsel are free to attach any pertinent exhibits which help to focus the issue of the proposed stay of all discovery.

*Id.*

### 3.      *Judge Hurley's Stay of Dispositive Motion Practice*

In the wake of the Initial Conference and the permission granted to brief the issue of whether discovery should be stayed, Judge Hurley issued an Electronic Order holding Defendant's request for a pre-motion conference to file a motion to dismiss in abeyance. *See* Apr. 12, 2013 Electronic Order. Specifically, Judge Hurley held that "Defendant's request for a pre-motion conference in anticipation of moving to dismiss pursuant to Rule 12(b)(1) is hereby held in abeyance pending Magistrate Judge A. Kathleen Tomlinson's determination on the forthcoming motion to stay discovery." *Id.*

### C.      **The Current Motion to Stay Discovery**

In accordance with this Court's directives, Defendant filed a letter motion to stay discovery, maintaining that exceptions within CAFA prohibit this action from proceeding in federal court. *See generally* Def.'s Mot. Defendant maintains that "a full stay of discovery is

warranted since Plaintiffs' claims will likely be dismissed, the burdens of discovery would be extensive and unnecessary, and a stay will not result in any prejudice to the Plaintiffs." *Id*. at 1.

The Defendant claims that both Broadridge, as a New York corporation, and more than two-thirds of the putative class members are citizens of New York State. Def.'s Mot. at 1. As a result, the Defendant argues, the action lacks subject matter jurisdiction under CAFA. *Id*. Further, Defendant contends that the breadth of discovery and the burden it presents justifies a full stay pending Judge Hurley's decision on the anticipated motion to dismiss. *Id*. at 3. Third, Plaintiffs will not be prejudiced by a full stay of discovery, particularly because of their "declared intention to re-file in state court" in the event this action is dismissed for want of jurisdiction. *Id*. In this vein, Defendant asserts that they have demonstrated the requisite "good cause" to stay discovery. *Id*.

In response, Plaintiffs point out that there remains a dispute about whether the citizenship of Broadridge and that of the putative class is, in fact, consistent with Defendant's representations. *See* Pls.' Opp. at 1. Plaintiffs state "[a]s the Court further knows, based on publicly available information that the Defendant put on file with the State of New York, Plaintiffs commenced this action with the belief that the Defendant's principal place of business was located in New Jersey." *Id*. at 1-2. As Plaintiffs put it, "[i]n one declaration, the Defendant asserts that its principal place of business is truly in New York, but then boldly admits that the information about its principal executive office location on file with New York is not a mistake." *Id*. at 2.[1] Plaintiffs gather that Defendant "intentionally provided such misinformation, to a state agency, for the purpose of its own 'administrative convenience.'" *Id*. (quoting Declaration of Mark D. DiGidio annexed to Def.'s Mot. as Exhibit "B" ["DiGidio Decl."] at 5-6).

---

[1] Here, Plaintiffs are referring to the listing of Defendant's "principal executive office" in Jersey City, New Jersey with the New York Department of State.

Secondly, Plaintiffs takes issue with the "redacted chart" supplied by the Defendant listing the members of the putative class. Pl.'s Opp. at 2. The chart, Plaintiffs claim, is defective because "the only information that the Defendant provides are the town and state in which it contends each class member lives or lived at some point." *Id*. Plaintiffs take issue with the fact that Defendant "redacts the names and street addresses of each putative class member and does not provide a phone number or any other means for <u>anyone</u> to be able to verify the accuracy of the chart's details." *Id*. (emphasis in original).

Plaintiffs propose that "the Court order the Defendant to produce the complete chart of the putative class, without redaction, and with the addition of a column containing a contact number for each individual." Pls.' Opp. at 2. Thereafter, at their own expense, Plaintiffs will "randomly select a handful of putative class members and attempt to contact them to verify the information about them that the Defendant has provided." *Id*. Plaintiffs maintain that, if the "defendant's information proves accurate," the Plaintiffs will concede that Defendant's anticipated motion to dismiss is unnecessary. *Id*. Alternatively, if the data disclosed by this exercise is inconsistent with Defendant's representation as to the putative class, "Plaintiff will then request broader discovery from the Court." *Id*. This activity, Plaintiffs maintain, "poses absolutely no prejudice" to the Defendant on the rationale that the foregoing discovery materials will have to be supplied to Plaintiff in any event once merits-based discovery commences, either in the instant forum or in state court. *Id*.

## IV.  <u>DISCUSSION</u>

Federal Rule of Civil Procedure 26(c) provides that "for good cause shown," a district court may, in its discretion, stay discovery or issue a protective order limiting discovery to certain matters. *See* FED. R. CIV. P. 26(c). A party seeking a protective order has the burden of showing that good cause exists for issuance of that order. *See, e.g. Gambale v. Deutsche Bank*

*AG*, 377 F.3d 133, 142 (2d Cir. 2004); *Garnett-Bishop v. New York Community Bancorp, Inc.*,
No. 12 Civ. 2285, 2013 WL 101590, at *1 (E.D.N.Y. Jan 8, 2013).  Further, it is well-settled in
this District that litigants are not entitled to an automatic stay of discovery pending the
determination of a motion to dismiss.  *See Bachayeva v. Americare Certified Special Servs.*, No.
12 Civ. 1446, 2013 WL 4495672, at *4 (E.D.N.Y. Aug. 20, 2013) (issuance of a stay of
discovery pending the outcome of a motion to dismiss is "by no means automatic") (internal
citation and quotations omitted); *Thomas v. New York City Dep't of Educ.*, 09 Civ. 5167, 2010
WL 3709923, at *3 (E.D.N.Y. Sept. 14, 2010) ("the pendency of a dispositive motion is not,
without more, grounds for an automatic stay" of discovery) (internal citations omitted); *Rivera v.
Incorporated Village of Farmingdale*, 06 Civ. 2613, 2007 WL 3047089, at *1 (E.D.N.Y. Oct. 17,
2007) (citations omitted) ("the law is clear in this court that there is no automatic stay of
discovery pending the determination of a motion to dismiss") (internal citation omitted); *Osan
Ltd. v. Accenture LLP*, No. 05 Civ. 5048, 2006 WL 1662612, at *1 (E.D.N.Y. June 13, 2006)
(denying motion to stay discovery during pendency of potentially dispositive motion); *Telesca v.
Long Island Hous. P'ship, Inc.*, No. 05 Civ. 5509, 2006 WL 1120636, at *1 (E.D.N.Y. Apr. 27,
2006) (collecting cases from within this district noting that the "pendency of a dispositive motion
is not, in itself, an automatic ground for a stay").  As one court has noted:

> Staying discovery pending judicial evaluation of the sufficiency of
> the complaint is consistent with the entire purpose of the stay
> provision[, which] is to avoid saddling defendants with the burden
> of discovery in meritless cases, and to discourage the filing of
> cases that lack adequate support for their allegations in the mere
> hope that the traditionally broad discovery proceedings will
> produce facts that could be used to state a valid claim.

*Gardner v. Major Auto. Companies*, 11 Civ. 1664, 2012 WL 1230135, at *3 (E.D.N.Y. Apr. 12, 2012) (internal citation and quotations omitted). Factors which courts have considered when determining whether or not a stay is appropriate include:

> (1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay.

*Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. Mar. 28, 2006) (internal citation omitted); *see also Thomas*, 2010 WL 3709923, at *3; *RxUSA Wholesale, Inc. v. Alcon Labs, Inc.,* No. 06 Civ. 3447, 2006 U.S. Dist. LEXIS 92816, at *5-6 (E.D.N.Y. Nov. 28, 2006). Where a discovery stay is sought pending a dispositive motion, another consideration which may be evaluated is the strength of the motion and likelihood of whether the case could be dismissed based upon the merits of the motion. *See, e.g., Spencer Trask Software & Info. Servs. v. RPost Int'l,* 206 F.R.D. 367, 368 (S.D.N.Y. 2002). Additionally, courts may take into account the nature and complexity of the action, whether some or all defendants have joined in the request for a stay, and the posture or stage of the litigation. *See* Chesney, 236 F.R.D. at 115.

## A. Whether Broadridge Has Made a Strong Showing that Plaintiffs' Claims are Unmeritorious

In assessing whether Plaintiffs' claims are unmeritorious, the Court turns its attention to the "home state" and "local controversy" exceptions within CAFA which Defendant argues provide the grounds for the dismissal of this action. "CAFA allows for the exercise of federal diversity jurisdiction over class actions involving 100 or more class members, in which the amount in controversy exceeds the sum or value of $5,000,000 (exclusive of interest and costs), and there is minimal diversity, *i.e.,* where, *inter alia,* at least one member of the putative class and one defendant are citizens of different states." *Richins v. Hofstra University*, 908 F.Supp.2d

10

358, 360 (E.D.N.Y. 2012) (citing *Anirudh v. CitiMortgage, Inc.,* 598 F.Supp.2d 448, 450

(S.D.N.Y.2009); 28 U.S.C. § 1332(d)(2)(A)). "CAFA thus expands federal diversity jurisdiction

allowing removal of cases lacking complete diversity of citizenship among the parties." *Id*.

(citing *BlackRock Financial Management Inc. v. Segregated Account of Ambac Assur. Corp.,*

673 F.3d 169, 175 (2d Cir.2012)). "By legislating the expansion of diversity jurisdiction,

Congress intended to allow federal courts to keep 'cases of national importance' in Federal court,

and 'to restore the intent of the framers of the Constitution by providing for Federal court

consideration of interstate cases of national importance under diversity jurisdiction.'" *Id*. (citing

*Mattera v. Clear Channel Communications, Inc.,* No. 06 Civ. 1878, 2006 WL 3316967 *7

(S.D.N.Y. Nov. 14, 2006)).

　　　　A brief description of the CAFA "home state" exception may shed some light on the

evidentiary requirements which Defendant must prove in order to sustain its motion to dismiss:

> CAFA includes several exceptions, including the home state
> exception which provides that: "[a] district court shall decline to
> exercise jurisdiction ... over a class action in which ... t*wo-thirds or
> more of the members of all proposed plaintiff classes in the
> aggregate, and the primary defendants, are citizens of the State in
> which the action was originally filed.*"

*Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013) (quoting 28 U.S.C.

§ 1332(d)(4)(B)) (emphasis added). Additionally, "when jurisdiction is based on CAFA, the

party seeking to avail itself of an exception to CAFA jurisdiction over a case originally filed in

federal court bears the burden of proving the exception applies." *Anirudh v. CitiMortgage, Inc.*,

598 F. Supp. 2d 448, 451 (S.D.N.Y. 2009). Therefore, in the instant case and for the purposes of

this motion, Defendant has the burden of showing that the "home state" exception has been met

by a preponderance of the evidence. *See Richins*, 908 F. Supp. 2d at 362.[2]

Congress also carved out the "local controversy exception" under 28 U.S.C.

§ 1332(d)(4)(A). "Under the "local controversy" exception "[a] district court shall decline to

exercise jurisdiction . . .

(A)(i) over a class action in which - -

> (I) greater than two-thirds of the members of all proposed plaintiff
> classes in the aggregate are citizens of the State in which the action
> was originally filed;
>
> (II) at least 1 defendant is a defendant - -
>
> > (aa) from whom significant relief is sought by members of
> > the plaintiff class;
> >
> > (bb) whose alleged conduct forms a significant basis for the
> > claims asserted by the proposed plaintiff class; and
> >
> > (cc) who is a citizen of the State in which the action was
> > originally filed; and
>
> (III) principal injuries resulting from the alleged conduct or any
> related conduct of each defendant were incurred in the State in
> which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class

---

[2]      The Court notes that "[t]he Second Circuit has not resolved the level of proof required to
establish an exception to CAFA jurisdiction." *Hart v. Rick's NY Cabaret Intern., Inc.*, 2014 WL
301357, at *5 (S.D.N.Y. Jan. 28, 2014). "Some Circuits have applied a preponderance of the
evidence standard." (internal citations omitted). "One district court in this Circuit has applied a
reasonable likelihood standard." *Id.* (citing *Mattera*, 239 F.R.D. at 80 ("While Defendants have
not provided evidence, in the form of an affidavit or otherwise, establishing such citizenship, it is
reasonably likely that more than two-thirds of the putative class members of the proposed
class—all of whom work in New York—are citizens of New York."). In *Hart* and *Richins*, the
courts applied a "preponderance of the evidence" burden of proof. *See Hart*, 2014 WL 301357,
at *5; *see also Richins*, 908 F.Supp.2d at 362.

action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

*Brook v. UnitedHealth Group, Inc.*, No. 06 Civ. 12954, 2007 WL 2827808, at *3 (S.D.N.Y. Sept. 27, 2007) (quoting 28 U.S.C. § 1332(d)(4)(A)); *Henry v. Warner Music Group Corp.*, No. 13 Civ. 5031, 2014 WL 1224575, at *4 (E.D.N.Y. Mar. 24, 2014).

In the instant case, Defendant has "produced from its Human Resources database the home address information (town, state and zip code) for the 870 individuals within Plaintiffs' definition of the putative class; 700 current employees and 170 former employees."  Def.'s Mot. at 2 (citing Declaration of Douglas Myers, Senior Director, Human Resources ["Myers Decl."] annexed as Exhibit A to Pl.'s Mot. ¶¶ 3-5).  In sum, Myers identified 865 (751 of 870 employees) members of Plaintiffs' putative class who are residents of New York State.  *Id.* (citing Myers Decl. ¶ 7).  This number more than satisfies the two-thirds residency requirement under the CAFA "home state" and "local controversy" exceptions.  *Id.*

The Court is not persuaded by Plaintiff's argument that the information supplied by Defendants does not sufficiently establish that more than two-thirds of the putative class members are residents of New York State.  As an initial matter, the Defendant appropriately redacted the names and street addresses of these individuals given the early stage of litigation.  Second, Plaintiffs' contention - - that the listing of Defendant's "principal executive office" with the Department of State is indicative of the tendency of Defendant to misrepresent and misinform the Court - - is unsupported.  The Court finds credible Defendant's position that the New Jersey office was listed for purposes of administrative convenience and does not govern Broadridge's "principal place of business."  This representation is supported by the declaration of Defendant's associate general counsel, which is discussed in further detail below.  The

Supreme Court has held that the "principal place of business" of a corporation is defined by its "nerve center." *Hertz Corp. v. Friend,* 130 S.Ct. 1181, 1186 (2010) (defining "principal place of business" as its "nerve center" — "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities").

In *Richins*, the defendants argued that plaintiffs needed to show additional proof that more than two-thirds of the putative class members were residents of New York State which would thereby qualify the case for mandatory and discretionary remand to state court under CAFA. *Richins*, 908 F.Supp.2d at 363. The defendants in *Richins* provided a chart illustrating the percentage of Hofstra University graduates with New York mailing addresses on file. *Id*. at 362. The court found that "[t]he data and calculations set forth by Plaintiffs support strongly the argument that greater than two-thirds of the members of the Plaintiff Class are citizens of the State of New York." *Id*. at *362-63. Although defendants did not dispute the accuracy of the data there, they did dispute whether the data reflected the citizenship of the putative class members since the data was restricted to mailing addresses on file. *Id*. The Court ultimately rejected defendants' contentions, holding that

> [t]aken to its logical conclusion, Hofstra's argument would require this court to conduct a full trial on the merits as to the citizenship of every class member before reaching a determination of whether or not a CAFA exception applies. That cannot be the intent of the statute. Indeed when determining in the context of a motion to remand whether a CAFA exception applies, the court is required to make a citizenship determination at the very early stages of the litigation.

*Id*. Here, the Court finds the data supplied by Broadridge to be even more substantial than that provided by the plaintiffs in *Richins*. Defendants have provided the hometown, state, and zip codes of the putative class members both currently and formerly employed with Broadridge. *See* Myers Decl., Ex. "A" and "B."

The court in *Richins* ordered expedited discovery on the issue of whether the action should be remanded to state court pursuant to CAFA, 28 U.S.C. § 1332(d)(3). *Richins*, 908 F. Supp. 2d at 360. This is the single case relied upon by the Plaintiffs to argue that this Court, too, should order expedited discovery. Pls.' Opp. at 3. In *Richins*, Defendants removed the action from state court to federal court pursuant to CAFA. *Richins*, 908 F.Supp.2d at 360. In response, the plaintiffs sought a mandatory remand and the court found that additional discovery was necessary to confirm whether the two-thirds threshold had been met under 28 U.S.C. § 1332(d)(3). *Id.* The instant case is distinguishable from *Richins*. First, the Court has, in effect, already permitted limited discovery by allowing the parties to attach supporting evidence to the motion to stay discovery. *See* DE 13 ("Counsel are free to attach any pertinent exhibits which help to focus the issue of the proposed stay of all discovery."). Second, as Plaintiffs point out, the *Richins* plaintiffs "did not request the names, street addresses and contact numbers of the putative class members." Pls.' Opp. at 3. Moreover, the court in *Richins* ultimately found the showing made by the defendants there to be far less substantial than the information presented by Broadridge here to meet the two-thirds residency threshold under CAFA.

Moreover, Defendant has satisfactorily demonstrated that it is a citizen of the State of New York, notwithstanding that its "principal executive office" is listed with the New York Department of State as Jersey City, New Jersey. Defs.' Mot. at 2. Under federal law, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). "This provision 'establishes a theory of dual citizenship for corporations and if either the corporation's place of incorporation or principal place of business destroys diversity, then the courts will not have diversity jurisdiction.'" *Brauner v. British Airways PLC*, No. 12 Civ. 343, 2012 WL 1229507, at

*3 (E.D.N.Y. Apr. 12, 2012) (quoting *Sty-Lite Co. v. Eminent Sportswear Inc.*, 115 F. Supp. 2d 394, 398 (S.D.N.Y. 2000)).

Defining a corporation's "principal place of business" is based on an evaluation of several factors. "Recent Supreme Court precedent holds that a corporation's 'principal place of business' is 'the place where a corporation's officers direct, control, and coordinate the corporation's activities, often called the 'nerve center.'" *Brauner*, 2012 WL 1229507, at *3 (quoting *Hertz Corp.*, 130 S.Ct. at 1192); *FirstStorm Partners 2 LLC v. Vassel*, No. 10 Civ. 2356, 2012 WL 1886942, at *5 (E.D.N.Y. Mar. 8, 2012). "[I]n practice it should normally be the place where the corporation maintains its headquarters . . . ." *Brauner*, 2012 WL 1229507, at *3 (quoting *Hertz*, 130 S.Ct. at 1193). "A corporation has only one principal place of business." *Id.* (citing *Hertz*, 130 S.Ct. at 1193).

Here, Defendant has provided a Declaration from Associate General Counsel Mark DiGidio to support its representation that its "principal place of business" is Lake Success, New York - - not Jersey City, New Jersey. *See* DiGidio Decl. In his declaration, DiGidio represents that Defendant's principal place of business is located at 1981 Marcus Avenue, Lake Success New York. *Id.* ¶ 1. Broadridge, DiGidio explains, has "maintained its headquarters at the Lake Success, New York location since 2007." *Id.* ¶ 3. Furthermore, DiGidio states that it is at the Lake Success, New York location where Broadridge's "principal corporate officers direct, control and coordinate Broadridge's operations and activities on a daily basis." *Id.* ¶ 4. Among these officers are Broadridge's (1) Chief Executive Officer and Director, (2) President, (3) Corporate Senior Vice President and Chief Operating Officer, (4) Corporate Vice President and Chief Financial Officer, (5) Corporate Vice President, (6) General Counsel and Secretary, (7) Corporate Vice President, Human Resources, and (8) Corporate Vice President, SPS

International and Global Outsourcing Solutions.  *Id.*  The Court finds this information

compelling with regard to the argument that Broadridge's principal place of business is in New

York.  Moreover, courts in the Second Circuit regularly find a corporate officer's sworn

statement to be sufficient proof of a corporation's principal place of business.  *See Strix, LLC v.*

*GE Capital Comm.*, 11 Civ. 4403, 2012 WL 2049825, at *2 (E.D.N.Y. May 7, 2012); *FirstStorm*

*Partners 2 LLC*, 2012 WL 1886942, at *5.

The Court is not ignoring the fact that Defendant has listed a "principal executive office"

in Jersey City, New Jersey in its filings with the New York State Department of State.  Pls.' Opp.

at 2; Defs.' Opp. at 2-3.  The mere listing of a non-New York "principal executive office" with a

state agency is, however, not determinative of Defendant's "principal place of business" under

federal law.  *See Hertz*, 130 S. Ct. at 1194.  Moreover, as stated in DiGidio's sworn declaration,

a Jersey City, New Jersey location was listed for "administrative convenience so as to ensure that

any formal tax notifications from New York State would be sent directly to the tax department

and timely addressed."  DiGidio Decl. ¶ 6.  Given these facts, the Court finds that Defendant will

likely show that the Court lacks jurisdiction over this matter pursuant to the "home state" and

"local controversy" exceptions of CAFA.  As a result, Broadridge has shown that the Complaint

is "unmeritorious" in the sense that diversity jurisdiction cannot be sustained in these

circumstances.  The first factor therefore weighs in favor of a stay.

### B. The Breadth of Discovery and the Burden of Responding to It

While the Court notes that Defendant has provided some evidence that the Complaint

may be dismissed, this factor is not dispositive and the Court must also review other factors in

exercising its discretion to stay discovery under Rule 26(c).  *See Ceglia v. Zuckerberg*, No. 10

Civ. 569A(F), 2012 U.S. Dist. LEXIS 85633, at *3 (W.D.N.Y. 2012) ("In finding good cause, a

court is required to balance several relevant factors including the pendency of dispositive

motions, potential prejudice to an opposing party, the extensiveness of the requested discovery,

and the burden of the requested discovery on the requested party, *i.e.*, the party seeking the

stay.") (internal citations omitted); *Ellington Credit Fund, Ltd. v. Select Portfolio Services, Inc.*,

No. 08 Civ. 2437, 2009 WL 274483, at *1 (S.D.N.Y. Feb. 3, 2009). Specifically, the first prong

of the analysis relating to whether the claim is "unmeritorious" must be balanced against other

factors when assessing whether a stay of discovery should be imposed. The Court must also

assess the breadth and burden of discovery presented by this action. *Chesney*, 236 F.R.D. at 115;

*Barnes v. County of Monroe*, No. 10 Civ. 6164, 2013 WL 5298574, at *1 (W.D.N.Y. Sept. 19,

2013); *Bachayeva v. Americare Certified Special Services*, Inc. No. 12 Civ. 1466, 2013 WL

4495672, at *4 (E.D.N.Y. Aug. 20, 2013). Here, Defendant has sought leave from Judge Hurley

to file a motion to dismiss the complaint for lack of subject matter jurisdiction. *See* DE 10. In

light of Plaintiffs' intentions to re-file this action in state court, dismissal of the instant action

will simply relegate discovery to the state court proceeding, not preclude it altogether. Although

class action discovery would likely present a burden on the Defendant while its dispositive

motion is pending, Plaintiffs will likely engage in similar class discovery in state court. *See*

*Fantastic Graphics Inc. v. Hutchinson*, No. 09 Civ. 2514, 2010 WL 475309, at *3 (E.D.N.Y.

Feb. 8, 2010) (denying defendant's motion to stay discovery because irrespective of the Court's

ultimate decision on the issue of venue, the action was going to continue either "here or in New

Jersey"). Like the circumstances in *Fantastic Graphics*, even if the Defendant's motion to

dismiss is granted here, the case will likely be re-filed in state court rather than be abandoned in

its entirety.

Moreover, rather than seeking full-blown class discovery, Plaintiffs are simply seeking to verify the residency of the putative class members. *See* Pls.' Opp. at 2. To this end, the Court finds the Plaintiffs' proposal reasonable since they are not, at this stage, seeking to engage in merits discovery. *Id*. Plaintiffs seek to contact, at their own expense, a "handful of putative class members…to verify the information" provided by Broadridge. Pls.' Opp. at 2. If the information supplied by Broadridge proves to be accurate, the Plaintiffs have proposed that they will forego further litigation in federal court and concede Defendant's representation that this Court lacks subject-matter jurisdiction. Pls.' Opp. at 2. As such, the Court does not find the limited scope of discovery requested by Plaintiffs to be burdensome. This factor tips the scale in Plaintiffs' favor.

### C.      The Risk of Unfair Prejudice to the Plaintiffs

Plaintiffs argue that they will be prejudiced if the Court does not permit limited discovery to determine whether the representations made by the Defendant concerning the residency of the putative class members is, in fact, true and verifiable. Pls.' Opp. at 2. Plaintiffs claim that if they are "to later learn in State court discovery that the Defendant's chart was inaccurate, they will not be able to halt the case and re-file here." *Id*. Permitting limited additional discovery on the narrow issue of whether the putative class-members are citizens of New York is appropriate here and mitigates potential prejudice to the Plaintiffs' ability to maintain this action in federal court. Defendants contend that there is no prejudice to implementing a full stay of discovery here since Plaintiffs can re-file the action in state court. Def.'s Mot. at 3. Granting leave for limited, expedited discovery in the present matter will not cause Defendant to "suffer the heavy burden of class action discovery." *Id*. Moreover, the limited production will not prejudice the Defendant because this information is ultimately going to be provided in some court. Finally,

Plaintiffs state that they will "request broader discovery from the Court" if the representations in the unredacted data supplied by Broadridge are inconsistent with the results of their investigation. Pls.' Opp. at 2. The Court will address that issue if and when it materializes.

### D. Additional Considerations

Finally, "[c]ourts also may take into consideration the nature and complexity of the action, whether some or all of the defendants have joined in the request for a stay, and the posture or stage of the litigation." *Chesney*, 236 F.R.D. at 115. The Court appreciates the potentially complex nature of this action in light of the number of putative plaintiffs. At the same time, the Court points out that the causes of action are not particularly complex. Some discovery, therefore, would be beneficial to resolving the threshold issue of subject-matter jurisdiction, which may ultimately negate the necessity of Defendant's dispositive motion if Plaintiffs agree, as they represent, to foreclose litigation upon a review of the putative plaintiff's unredacted records. Moreover, discovery has been in limbo for over a year. In the interest of moving this case forward, the Court finds that a balance of the factors supports the granting of limited, expedited discovery to bring closure to the jurisdictional issues presented by the Defendant.

In light of the foregoing analysis, the Court directs Broadridge to produce to Plaintiffs an updated and unredacted chart of the putative class members which includes their street addresses and phone numbers, no later than May 1, 2014. Plaintiffs will then have thirty (30) days from receipt of the updated chart to complete their verification of the Plaintiffs' state citizenship. Plaintiffs' communications with putative class members must be limited to their citizenship. Following this thirty-day period, the Plaintiffs are directed to file a letter with the Court confirming whether they have determined that the Court lacks subject-matter jurisdiction under

the "home state" and/or "local controversy" exceptions of CAFA.  If Plaintiffs believe further discovery is warranted, they must articulate a reasonable basis to the Court to justify such discovery while the Defendant's motion to dismiss is pending.

**V.    CONCLUSION**

For the foregoing reasons, the Defendant's motion to stay discovery is GRANTED, in part, and DENIED, in part, to the extent set forth in this Order.

**SO ORDERED.**

Dated:  Central Islip, New York
          March 31, 2014

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge